# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

HAUCK HOLDINGS
COLUMBIA SC, LLC,

      Plaintiff,

      v.                                           C-1-08-682

TARGET CORPORATION, et al.,

      Defendants.

## ORDER

This matter is before the Court upon a Motion for Summary Judgment filed by defendant First American Title Insurance Company (First American) (doc. 52), an opposing memorandum filed by plaintiff/counterclaim defendant Hauck Holdings Columbia SC, LLC (Hauck) (doc. 63), and First American's reply (doc. 67). Also before the Court is Hauck's Motion for Partial Summary Judgment against First American (doc. 49) and Hauck's Motion for Leave to Exceed the Page Limitation for its supporting memorandum (doc. 46). First American has filed a memorandum in opposition to the summary judgment motion (doc. 59) and Hauck has filed a reply (doc. 69). Hauck requests oral argument on its summary judgment motion (doc. 88), which First American opposes (doc. 91).

### I. Background

Plaintiff Hauck originally filed this action in state court on September 2, 2008 (doc. 2). Hauck subsequently filed an amended complaint on April 1, 2009 (doc. 28) following removal of the action to federal court. This dispute arises out of Hauck's purchase of the Northtowne Commons Shopping Plaza (Northtowne). The purchase made Hauck a party to an Operation and Easement Agreement (Original

1

OEA) and amendments to the OEA entered into among Hauck's predecessors-in-interest. The predecessors-in-interest included an entity now known as the Target Corporation (Target). Hauck claims that pursuant to the Original OEA and an Assignment and Assumption Agreement (Assignment and Assumption), Target was obligated to pay Hauck certain fees for maintenance of Northtowne's common areas (CAM expenses). Hauck alleges that when it requested those fees from Target in April of 2007, Target refused to pay the full amount sought, claiming that its obligations to contribute to maintenance of the common areas are governed by a Supplemental Restriction Agreement which purports to amend the Original OEA. Hauck thereafter made a claim under a title insurance policy (Policy) which First American had issued to Hauck in connection with its purchase of Northtowne. First American denied Hauck's claim on the ground that the Supplemental Restriction Agreement was excluded under the Policy.

In its amended complaint, Hauck sought (1) a declaratory judgment against Target declaring that the Original OEA is enforceable and that Target is required to pay CAM expenses, insurance, and property taxes under the Original OEA (Count I); a declaratory judgment declaring that Target is required to pay those sums set forth in the Original OEA and that the "Supplemental Restrictions" are not an enforceable modification of the Original OEA and are unenforceable against Hauck (Count II); damages for sums owing under § 4.4 of the Original OEA based on breach of contract (Count III); and (4) compensation based on a theory of unjust enrichment for services set forth in the Original OEA.

Hauck brought the following claims against First American based on this defendant's alleged liability under the Policy: (1) a claim for declaratory judgment declaring that First American is required to pay for any damages and attorney fees and costs incurred by Hauck as a result of enforcement of any terms of the unrecorded "Supplemental Restrictions"; (2) a claim for breach of contract alleging that the

2

unrecorded "Supplemental Restrictions" are covered by the Policy and First American's denial of coverage under the Policy has breached the terms of the Policy so that Hauck is entitled to indemnification; and (3) a claim for "bad faith denial" alleging that First American intentionally failed to determine whether the denial of coverage was lawful and that it consciously disregarded Hauck's rights and breached its duty of good faith by denying coverage under the Policy.

Prior to the filing of the amended complaint, Target asserted a counterclaim against Hauck (doc. 8). Target alleged that the Supplemental Restriction Agreement was identified in the Assignment and Assumption filed in the Lucas County Recorder's Office; Hauck had notice of the Supplemental Restriction Agreement when it purchased Northtowne; the agreement defines the categories of expenses Hauck may bill to Target as CAM costs and defines Target's rights and obligations; Hauck has incorrectly billed Target for taxes, insurance and CAM expenses Target does not owe and has improperly calculated the administrative fee it has charged to Target in violation of the terms of the Supplemental Restriction Agreement; and as a result of these improper billings, Target has remitted payment to Hauck in amounts over and above its obligations. Target sought a declaratory judgment that the Supplemental Restriction Agreement is enforceable against Hauck, affirming that Target has assumed maintenance of the common area upon its site, and defining the parties' rights under the Original OEA as modified by subsequent agreements, including the Supplemental Restriction Agreement.

Hauck and Target subsequently reached a settlement of their claims/counterclaims against each other. *See* doc. 88. The only claims that remain pending are Hauck's claims against defendant First American, for which Hauck seeks the following relief:

- A declaratory judgment that First American breached its duty to defend and must indemnify Hauck for all costs of this action, including attorney fees;

- A declaratory judgment that First American must indemnify Hauck for any damages sustained due to enforcement of the unrecorded Supplemental Restriction Agreement;

- A judgment finding that First American breached the Policy by denying coverage for Hauck's claim;

- A judgment finding that First American breached the Policy by refusing to defend against Target's counterclaims; and

- A judgment finding that First American's denials were made in bad faith and granting punitive damages against First American.

## II. Motions for Summary Judgment

### A. First American's Motion for Summary Judgment

First American contends it is entitled to summary judgment on Hauck's claims against it on two grounds. First, it avers that the dispute between Hauck and Target is actually a contract dispute rather than a title dispute. First American argues that Hauck is in fact seeking to enforce the Original OEA, which is specifically excluded from coverage under the Policy. Accordingly, First American contends it has no obligation to either indemnify or defend Hauck under the Policy.

Second, First American argues that Hauck's claims against it are precluded as a matter of logic. First American asserts that under binding Ohio Supreme Court precedent, the alleged title defect - the unrecorded Supplemental Restriction Agreement - is enforceable only if Hauck had actual knowledge of the agreement. However, the Policy excludes losses arising out of defects that are actually known to the insured but are not recorded and are not known to First American. Thus, First American reasons that the alleged defect (1) is either enforceable because Hauck had actual knowledge of the Supplemental Restriction Agreement, in which case the agreement is excluded under the Policy, or (2) is not enforceable because Hauck did not have actual knowledge of it and it therefore is not a title defect insured under the Policy. Finally, First American contends that it denied Hauck's claim in good faith

4

and with reasonable justification based on appropriate claims handling.

Hauck counters that by refusing to defend it against Target's claims asserting that the Supplemental Restriction Agreement is valid and seeking to enforce Target's rights under the agreement, First American has (1) breached the express terms of the Policy, and (2) acted in bad faith. Hauck contends that the Policy provides coverage for Target's claims against it because Target has asserted the Supplemental Restriction Agreement as an encumbrance on Hauck's insured title to the portion of Northtowne which Hauck owns (hereinafter "the Property"). Hauck claims that Target has done so by claiming that the unrecorded Supplemental Restriction Agreement amended and modified the recorded Original OEA, in effect claiming that the agreement modified the state of the title First American insured and encumbered Hauck's title with an interest neither identified nor listed in the Policy.

**B.      Hauck's Motion for Partial Summary Judgment**

Hauck claims that it is entitled to summary judgment on all counts of its complaint against First American based on the following undisputed facts: Hauck did not know of the Supplemental Restriction Agreement before purchasing the Property; although the agreement is not recorded, it purportedly modifies a recorded instrument in the chain of title, thereby constituting a defect in the title of the Property; and Hauck paid First American for title insurance to protect Hauck against unknown defects in the title of the Property. Hauck contends that First American has acted in bad faith and has refused to perform its contractual duties to remedy the defect in the title and defend Hauck in this lawsuit.

In response, First American contends that it was not required to provide a defense to Hauck and it acted in good faith by denying Hauck's claim because the Supplemental Restriction Agreement is ultimately irrelevant to Hauck and Target's dispute. First American avers that Target has made clear

5

to Hauck that it is disputing the expenses Hauck claims are owed it as a matter of contract interpretation, regardless of whether the Supplemental Restriction Agreement is enforceable. That is, First American insists that Target is relying exclusively on the terms of the Original OEA without regard to the enforceability of the Supplemental Restriction Agreement. In any event, First American reiterates that the agreement is not covered by the Policy because the agreement is enforceable only if Hauck had knowledge of it, but Hauck acknowledges if it had actual knowledge of the agreement and it were enforceable, Hauck's claims would necessarily be excluded under the Policy.

### III. Undisputed Facts

1. Hauck's claims against First American arise out of Owner's Policy of Title Insurance No. 120-136187 which Hauck obtained in connection with its purchase of the Property in Northtowne.

2. In addition to the Property, Northtowne consists of multiple integrated parcels, including the Dick's parcel, the Kroger parcel, the McDonald's parcel, the Special Tee Golf parcel, and the parcel owned by Target.

3. The Northtowne site as a whole is serviced by a number of overlapping systems, including the paving, landscaped areas, sprinkler systems, storm sewer systems, lighting systems, signage systems, traffic light and traffic control systems, storm water retention systems, sanitary sewer systems, and drive access areas. The zoning approval for the site required such integrated systems.

3. The Lewis-Alexis Group was the original developer of Northtowne. It operated the Property until March of 2002, when Nationwide Life and Annuity Insurance Company (Nationwide) acquired the Property from it.

4. The Lewis-Alexis Group entered into the Original OEA with the K-Mart Corporation on April

3, 1989. The Original OEA was recorded at the Lucas County Recorder's Office at 89-138A04.

5. The Original OEA defines the "Common Area" of Northtowne as "all areas within the exterior boundaries of the Shopping Center, exclusive of (i) buildings and (ii) any Outside Sales Area."

6. In § 4.4 (titled "Additional Obligations"), the Original OEA states that each party is to "pay its pro rata share of all costs incurred by Developer in maintaining (i) any private off site utilities servicing the Shopping Center Site (ii) the Storm System servicing the Shopping Center Site . . . and (iii) any open space required to maintain the zoning of the Shopping Center . . ."

7. Section 4.4 requires each party to pay a pro rata share of open space maintenance costs, insurance, and real estate taxes, as well as an administrative fee.

8. The Original OEA requires under § 8.1 that if Lewis-Alexis sold a portion of Northtowne to another party, that party would become a party to the Original OEA by entering into an assumption agreement agreeing to the terms of the Original OEA.

9. The Original OEA could "be amended by, and only by, a written agreement signed by all of the then current Parties and shall be effective only when recorded in the county and state where the Shopping Center is located."

10. Target bought a portion of Lewis-Alexis' parcel.

11. Pursuant to the Assignment and Assumption dated May 4, 1989, Target ratified the terms of the Original OEA. Target assumed some, but not all, of the rights and obligations of Lewis-Alexis under the Original OEA. Target agreed in the Assignment and Assumption that the Target parcel is "designated as a portion of the Developer Site which is subject to the payment of costs as set forth in Section 4.4 of the [Original] OEA."

12. Pursuant to the Assignment and Assumption, Target did "not have the rights or obligations

afforded the Developer in . . . Section 5.4 (except to the extent that Target is required to carry insurance pursuant to the terms of the Supplemental Agreement between Target and Developer of even date herewith)."

13. Lewis-Alexis and Target entered into a second Operation and Easement Agreement dated May 4, 1989 (the "Second OEA") which lists additional restrictions on operations for Lewis-Alexis and Target. The Second OEA was recorded at the Lucas County Recorder's Office at 89-187B02. In it, the parties covenanted that the Original OEA was in full force and effect.

14. K-Mart and Lewis-Alexis amended the Original OEA on July 23, 1990. They covenanted that the Original OEA was in full force and effect. The K-Mart Amendment was recorded at the Lucas County Recorder's Office at 89-0336E10. On August 14, 1990, Target entered into an amendment to the Original OEA which assumed the obligations in the K-Mart Amendment. The Target Amendment was recorded at the Lucas County Recorder's Office at 90-339C07.

15. Target and Lewis-Alexis entered into a Supplemental Restriction Agreement. The Agreement is not recorded.

16. Although the Supplemental Restriction Agreement is unrecorded, Target claims it modifies a recorded instrument in the chain of title.

17. According to the terms of the Supplemental Restriction Agreement, the Developer is entitled to receive from Target its proportionate share of the CAM costs, which include "only such funds as are reasonably necessary for the operation, maintenance and insurance of the Common Area." The agreement also entitles the Developer to an administration fee based on a percentage of those maintenance costs. The Supplemental Restriction Agreement gives Target the right to opt-out and maintain its own parcel upon 60-days notice while still being required to pay its

proportionate share and a fee for other common expenses.

18. Target has acknowledged that it would be liable for costs properly chargeable under § 4.4 of the Original OEA, regardless of whether the Supplemental Restriction Agreement is enforceable.

19. Hauck purchased the Property from Nationwide through Hauck's attorney, Sean Callahan, acting as trustee, on April 18, 2006. When it purchased the Property, Hauck succeeded to the rights and obligations of Lewis-Alexis under the Original OEA, the Assignment and Assumption, and the Second OEA.

20. Hauck performed a lease review and physical inspection when it purchased the Property. Callahan and Scott Hull, whose position is not disclosed in the proposed findings of fact, reviewed the title commitment for the Property. Hull and "Mr. Vallenti," whose position is likewise not disclosed in the proposed findings of fact, specifically asked Nationwide's representatives whether there were any further agreements. Nationwide never indicated that there were any other applicable agreements.

21. When Hauck bought the Property, it purchased the Policy from First American to protect itself against unknown defects in title to the Property. The Policy affirmatively insures Hauck's rights in the Original OEA. It insures against defects or encumbrances on the title.

22. The Policy insures Hauck

against loss or damage . . . sustained or incurred . . . by reason of: 1. Title to the estate or interest described in Schedule A being vested other than as stated therein; 2. Any defect in or lien or encumbrance on the title; 3. Unmarketability of the title; 4. Lack of right of access to and from the land.

23. The Policy also includes an indemnification provision pursuant to which First American agreed to "pay the costs, attorneys' fees and expenses incurred in the defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations." Section 4 of the Conditions and

Stipulations, in turn, provides as follows:

> Upon written request by the insured . . . the Company at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy.

24. Schedule B of the Policy states that it does not insure against loss or damage arising by reason of certain Special Exceptions.

25. Special Exception 10 excludes from coverage the "[t]erms, conditions and easements burdening the insured property as set forth in [the Original OEA] . . . as thereafter amended by [the K-Mart OEA Amendment] . . . : as thereafter amended by [the Assignment and Assumption and other documents].

26. Special Exception 11 excludes from coverage the "[t]erms, conditions and easements burdening the insured property as set forth in [the Second OEA] . . .: together with [other documents of record]."

27. Hauck was unaware of Target's unrecorded Supplemental Restriction Agreement when it purchased the Property

28. Target and Hauck dispute whether Hauck is subject to the unrecorded Supplemental Restriction Agreement.

29. On April 23, 2007, Hauck sent Target a bill for Target's pro rata share of the 2006 CAM, insurance, and property tax expenses. The CAM expenses were calculated according to the formula set forth in § 4.4 of the Original OEA.

30. A portion of the CAM expenses Hauck seeks to recover are for maintaining the common area on Target's parcel.

31. Target refused to pay this bill. Target disputed the CAM expenses on the ground that they are not consistent with the formula set out in the Supplemental Restriction Agreement. Target also disputed whether the CAM expenses are properly chargeable under § 4.4 of the Original OEA.

32. Hauck's former employee, Becky McKee, forwarded the Original OEA and the Assumption and Assignment to Target, stating that those documents "outlin[e] Target's responsibility to section 4.4 of the [Original OEA]."

33. Target disclosed the Supplemental Restriction Agreement to Hauck for the first time in June 2007 when Janell Niles of Target stated "I *found* a Supplemental Restriction Agreement." While Hauck claims that this is the first inkling it had that the Agreement existed, First American disputes this.

34. In a letter dated May 27, 2008, Daniel H. Demmerle, II, Esq., counsel for Hauck at Strauss & Troy, made a claim to First American under the Policy. The basis of the claim was Target's contention that the unrecorded Supplemental Restriction Agreement modified the Original OEA.

35. Hauck's claim under the Policy requested First American to take one of two actions: (1) obligate Target, via a declaratory judgment action, to pay its share without reference to the Supplemental Restriction Agreement, or (2) compensate Hauck for its obligation to pay a greater share due to failure of the Policy to list the Agreement.

36. Hauck's claim was assigned to John Sprowl, Claims Counsel for First American. Attached to the Claim Letter were the following documents: the Supplemental Restriction Agreement; the Policy; a January 29, 2008 email from Suzanne Schmidt, a Staff Accountant for Target, to McKee at Hauck; a letter of the same date from Callan to Bryan N. Suchy, a real estate

negotiator for Target; and a February 20, 2008 letter from Suchy to Callan.

37. Sprowl reviewed the documents attached to the Claim Letter. He independently obtained the title deeds in Northtowne and all of the documents listed in Special Exceptions 10 and 11 of Schedule B of the Policy, including, but not limited to, the Original OEA, the Assignment and Assumption, and the Second OEA. Sprowl also called Demmerle to clarify what documents he was referring to in the Claim Letter.

38. In a letter dated June 30, 2008, Sprowl informed Demmerle that the claim was denied, stating as follows:

> Because the Policy takes exception for the terms, conditions, and easements burdening the insured property of [the Original OEA], [the Assignment and Assumption], and other instruments of record, we are not obligated to enforce these terms, conditions and easements or to provide a legal opinion as to their effect.

39. Sprowl invited Demmerle to submit more information if he had any. No representative of Hauck ever responded to Sprowl's letter.

## IV. Applicable Law

### A. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may grant summary judgment as a matter of law only when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. ***Celotex Corp. v. Catrett***, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." ***Anderson v. Liberty Lobby***, 477 U.S. 242, 248 (1986) (quoting ***First Nat'l Bank of Arizona v. Cities Serv. Co.***, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed

and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

**B. Insurance Contracts**

Because this case was filed in federal court in Ohio under the court's diversity jurisdiction, the substantive law of Ohio applies. *See Biegas v. Quickway Carriers, Inc*., 573 F.3d 365, 374 (6th Cir. 2009) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

Ohio law provides that a title insurance policy is a contract between the insured and insurer. *Chicago Title Ins. Co. v. Huntington Nat'l. Bank,* 87 Ohio St.3d 270, 273, 719 N.E.2d 955, 959 (1999) (citing *Ohio Farmers Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537, syll. ¶ 1 (1922)). Thus, the relationship between the two parties to the agreement is purely contractual in nature. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061, 1063 (1984) (citing *Cochran*, 104 Ohio St. 427, 135 N.E. 537). Normal contract rules therefore apply. *Weiss v. St. Paul Fire & Marine Ins. Co.*, 283 F.3d 790, 796 (6th Cir. 2002) (citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988)). The primary role of the court in examining a written instrument is to

ascertain and give effect to the intentions of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id*. (quoting *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 509 N.E.2d 411, syll. ¶ 1 (1987)). The court must give plain language its ordinary meaning unless "manifest absurdity" results or it is clearly evident that another meaning was intended. *Id*. If the terms of the contract are unambiguous, the court determines the meaning of the contract. *Weiss,* 283 F.3d at 796 (citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 652 N.E.2d 684, 686 (1995)). A term is ambiguous if it is reasonably susceptible of more than one meaning. *Id*. (citing *King*, 519 N.E.2d at 1383).

One who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss. *Chicago Title Ins. Co.*, 87 Ohio St.3d at 273, 719 N.E.2d at 959 (citing *Inland Rivers Service Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 418 N.E.2d 1381 (1981)).

**C. The Duty to Defend**

An insurer's duty to defend an insured is separate and distinct from its obligation to indemnify an insured and the duties are triggered by different events. *Twin Maples Veterinary Hosp. v. Cincinnati Ins. Co.*, 159 Ohio App.3d 590, 594, 824 N.E.2d 1027, 1030 (Ohio App. 2 Dist., 2005) (citing *GuideOne Mut. Ins. Co. v. Reno*, 2002 WL 857682 (Ohio App. 2 Dist., Apr. 26, 2002) (unpublished decision), affirmed sub nom. *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 789 N.E.2d 1094 (2003). The duty to indemnify is triggered by the insured's actual legal liability under the terms of the policy. *Id*. at 594, 824 N.E.2d at 1030 (citing *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604,

14

605, 710 N.E.2d 677 (1999)). The duty to defend is triggered by the insured's demand that the insurer provide a defense to a claim of alleged liability. *Id*. Whether an insurer has a duty to defend is determined by the scope of the allegations in the underlying complaint. ***City of Sharonville v. Amer. Employers Ins. Co.,*** 158 Ohio App.3d 576, 581, 818 N.E.2d 295, 299 (2004). The duty arises "[w]here the allegations state a claim that falls either potentially or arguably within the liability insurance coverage." ***Twin Maples***, 159 Ohio App.3d at 594, 824 N.E.2d at 1031 (citing ***Anders***, 99 Ohio St.3d 156, 789 N.E.2d 1094, at ¶ 18). The duty to defend does not depend on whether the underlying action may eventually produce a result that fails to trigger the duty to indemnify under the policy. ***Sharonville,*** 158 Ohio App.3d at 581-582, 818 N.E.2d at 299. On the other hand, the insurer need not provide a defense to a claim of alleged liability "if there is no set of facts alleged in the complaint which, if proven true, would invoke coverage." ***Twin Maples***, 159 Ohio App.3d at 594-95, 824 N.E.2d at 1031 (citing ***Martin***, 85 Ohio St.3d at 605, 710 N.E.2d 677).

### V. Opinion

#### A. Request for Oral Argument

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Court therefore finds that oral argument is not necessary and Hauck's request for same is denied.

#### B. Hauck's Claims Against First American

First American argues that there is no scenario under which the Policy can cover a loss arising from the Supplemental Restriction Agreement. First American contends that if Hauck did not know of the Agreement, then it cannot be enforced against Hauck pursuant to ***Emrick v. Multicon Bldrs., Inc.***,

15

57 Ohio St.3d 107, 110, 566 N.E.2d 1189, 1194 (1991), which holds that an unrecorded land use restriction is not enforceable against a bona fide purchaser for value unless the purchaser has actual knowledge of the restriction. Conversely, First American argues that if Hauck had actual knowledge of the unrecorded Supplemental Restriction Agreement, Hauck's loss is excluded under the terms of the Policy because the agreement was known to Hauck prior to the date of the Policy, the agreement was unknown to First American, and the agreement was unrecorded.

Hauck contends that First American's argument improperly focuses on the merits of the litigation between Hauck and Target and not on First American's duty to defend Hauck against Target's counterclaim which relies on the Supplemental Restriction Agreement. Hauck argues that First American must defend it against Target's counterclaim because if Target is successful in its claims, then there will be a defect on the title in the form of the Supplemental Restriction Agreement and the defect will be covered by the Policy. Hauck's argument, however, is flawed. Whether the Supplemental Restriction Agreement is a defect on the title does not hinge on the validity of Target's claims. Nor does Target's mere assertion that the Supplemental Restriction Agreement is valid and binding on Hauck give rise to a duty to defend under the Policy. Rather, in determining the ultimate issue before the Court, i.e., whether Target's allegations against Hauck state a claim that falls either potentially or arguably within the Policy coverage, the Court must determine whether the Supplemental Restriction Agreement could possibly be construed as a defect or encumbrance on the title. For the reasons explained below, the Court finds that the Supplemental Restriction Agreement cannot be construed in this manner, and thus there is no set of facts alleged in the counterclaim which could invoke coverage under the unambiguous terms of the Policy. Accordingly, based on the undisputed facts, First American has no duty to defend Hauck with respect to Target's counterclaim against it.

The Policy lists the estate or interest in land covered by the Policy as "Fee Simple" with title vested in Hauck. The description of the land referred to in the Policy sets forth a number of rights, including the following:

- Parcel 3: Non-Exclusive rights of Lewis-Alexis Group in and to the Original OEA (Deed Record 89-138-A04).

- Parcel 3: "By instrument received fro [sic] record May 5, 1989 . . . in Mortgage Record 89-609-B11 [the "Assignment and Assumption"], Lewis Alexis Group assigned to Dayton Hudson Corporation its rights under [the Original OEA]."

- Parcel 4: Non-Exclusive rights of Lewis-Alexis Group in and to the Second OEA (Deed Record 89-187-B02).

Doc. 52, Att. 4, FA000008.

The Supplemental Restriction Agreement is not listed in the title as part of the description of the land covered by the Policy. In fact, Hauck emphasizes that the Property was subject to a number of recorded documents in the chain of title and that neither the title commitment nor the Policy mentions the Supplemental Restriction Agreement.

> The Policy provides that
>
> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND CONDITIONS AND STIPULATIONS, [FIRST AMERICAN] insures . . . against loss or damage . . . sustained or incurred by the insured by reason of: 2. Any defect in or lien or encumbrance on the title . . . .
>
> The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only [to] the extent provided in the Conditions and Stipulations.

The Policy states that First American shall defend the insured in any case where a party asserts a claim adverse to the insured as to those causes of action alleging a defect or encumbrance insured against by the Policy. Doc. 52, Att. 4, FA000020.

17

Although Hauck contends that the Supplemental Restriction Agreement is such a defect or encumbrance because it *purportedly* alters the terms of the Original OEA, which is a recorded instrument in the chain of title, an important distinction must be drawn between the Original OEA and the Supplemental Restriction Agreement in this regard. The Original OEA is indisputably part of the title because it is recorded and, in fact, the Policy includes the rights under the Original OEA in the description of the land covered by the Policy. The Supplemental Restriction Agreement, on the other hand, was never recorded and therefore never became enforceable pursuant to the express terms of the agreement it purported to modify. Specifically, § 8.1 of the Original OEA, which Hauck cites in its Motion for Partial Summary Judgment, specified that a party who entered into an assumption and agreement agreeing to the terms of the Original OEA would become a party to the Original OEA. Section 6.14 of the Original OEA provides that "This OEA may be amended by, and only by, a written agreement signed by all of the then current Parties and shall be effective only when recorded in the county and state where the Shopping Center is located." In fact, Hauck emphasizes that the Supplemental Restriction Agreement Target is attempting to enforce was never recorded, a point which neither Target nor First American disputes. Doc. 49, p. 8. Hauck concedes that the title First American insured encompassed the Original OEA with no exception for the Supplemental Restriction Agreement because the Original OEA required a signed, recorded writing to be modified. Doc. 49, p. 11. Thus, there is no dispute that (1) the Supplemental Restriction Agreement purports to amend the terms of the Original OEA; (2) any written agreement purporting to amend the Original OEA is not effective unless it is recorded in the county and state where Northtowne is located; and (3) the Supplemental Restriction Agreement is not recorded. It follows that the Supplemental Restriction Agreement never became effective, it is not enforceable, and as such it cannot constitute a defect or encumbrance on the title

insured by the Policy.

This finding ends the Court's inquiry. The Court need not address the parties' remaining arguments in order to resolve their summary judgment motions. Target's claim based on the Supplemental Restriction Agreement does not arise from a defect or encumbrance on the title but instead arises from a document that never became effective because it was not recorded as required under the Original OEA. While the whole point of title insurance may be to insure the property owner against an unknown defect in title as Hauck argues, the unenforceable and unrecorded Supplemental Restriction Agreement simply does not constitute a defect in title. The Policy does not insure against a claim arising out of what Hauck asserts to be a defect in title but which in fact is not.

Hauck argues that while it may ultimately be determined that the Supplemental Restriction Agreement is not enforceable and is not a defect, First American has a duty to defend Hauck so that such a determination can be reached. Again, however, the issue to be resolved in connection with a duty to defend is whether there is any set of facts alleged by the claimant which, if proven true, would invoke coverage. There is no such set of facts based on the undisputed evidence before the court. Because Hauck has not presented any evidence which raises a genuine issue of material fact as to whether the Supplemental Restriction Agreement is a title defect or encumbrance, First American has no duty to defend Hauck on the counterclaim brought against it by Target.

## VI. Conclusion

In accordance with the foregoing, Hauck's motion for leave to exceed page limitation (doc. 46) is **GRANTED** and its motion for partial summary judgment (doc. 49) is **DENIED**. First American's motion for summary judgment (doc. 52) is **GRANTED**. Hauck's claims against First American are **DISMISSED**. The claims/counterclaims between Hauck and Target having been settled, there are no claims remaining in the lawsuit. This case is **DISMISSED** and is **TERMINATED** on the docket of the court at plaintiff's cost.

**IT IS SO ORDERED.**

S/ Herman J. Weber
HERMAN J. WEBER, SENIOR JUDGE
UNITED STATES DISTRICT COURT